**Application of Laurent SEIGNEURIN.**
**Patent Appeal No. 8832.**

United States Court of Customs
and Patent Appeals.

March 22, 1973.

———◆———

James H. Littlepage, Washington, D. C., attorney of record, for appellant. Keith V. Rockey, Chicago, Ill., (McDougall, Hersh, Scott & Ladd, Chicago, Ill.), of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

1. This application is stated to be a continuation of an earlier copending application, serial No. 313,444, filed October 3,

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–5, all of the claims of appellant's application serial No. 721,600, filed April 16, 1968,[1] for a patent on a "Process for Preparing Fluoro-Halogenated Propane Derivatives and Use Thereof." All appealed claims are directed to the process for preparing. We reverse.

### The Invention

The invention is a process of preparing fluorochloropropane by reacting fluoro or fluoro-chloro ethylene with chlorinated methane in the presence of a catalyst consisting of gallium chloride, gallium bromide, or mixtures thereof. Claim 1 is representative, all other claims being dependent thereon and adding limitations thereto so that claim 1 is the broadest claim:

> 1. In the process of preparing fluoro-chlorinated propane compounds by the reaction of a compound selected from the group consisting of fluorinated and fluoro-chlorinated ethylene compounds with chlorinated methane compounds, the improvement which comprises catalyzing the reaction with a catalytic compound selected from the group consisting of gallium chloride, gallium bromide and mixtures thereof.

Admittedly known in the prior art is the process as above described except that the catalyst is preferably aluminum chloride ($AlCl_3$), a Friedel-Crafts catalyst, or some other catalyst in that category such as boron trifluoride, zinc chloride, or ferric chloride. Appellant's specification says,

> It is well known to obtain halogenated propane derivatives by condensation of halogenated methane deriva-

1963, and the rejection herein is a first-action final.

tives with ethylene derivatives in the presence of such catalysts as $BF_3$, $ZnCl_2$, $FeCl_3$, and preferably $AlCl_3$. Drawbacks of the prior art process using the preferred $AlCl_3$ are described in the specification as follows (our emphasis):

> However, the use of aluminum chloride catalyst leads to the formation of the desired fluoro halogenated propane derivative *in admixture with other reaction products* from which it is difficult and expensive to separate and in which the desired end product is secured in *low yields*. * * * Another drawback resulting from the use of aluminum chloride stems from the ready *exchange of halogens* during the catalytic reaction between the chlorine atoms of the aluminum chloride and fluorine atoms of the initial fluorinated compound or the fluorinated reaction product * * *.

Explaining the last-mentioned drawback, appellant's brief states that "the $AlCl_3$ catalyst is converted to a mixed halide, frequently $AlCl_2F$, and, consequently, is difficult to regenerate to restore the catalyst back to the form of $AlCl_3$."

Appellant alleges that by using gallium chloride or gallium bromide as catalyst instead of aluminum chloride the drawbacks are overcome in that the desired product is obtained in greater yield, higher purity, and in a state from which the desired product can be easily separated and the gallium catalyst can be recovered more readily.[2]

### The Rejection

The references relied on are:

British Patent     581,254     Oct. 7, 1946

Ulich et al., Z. Elektrochemie, 4I, 7b, 1935, article entitled in translation "Reaction-Kinetic Tests in Friedel-Crafts Ketone and Hydrocarbon Synthesis," pages 509–514.

The rejection, which is fully stated only in the examiner's final rejection, appears in essence in the following extracts therefrom:

Claims 1–5 are rejected as unpatentable [under] 35 U.S.C. 103 over the British patent in view of Ulich et al. The former discloses a reaction which differs from that instantly claimed only in the Friedel-Crafts (F–C) catalysts employed and the latter discloses gallium chloride to be a better F–C catalyst than $AlCl_3$ in a particular F–C reaction, thus teaching that gallium chloride is not only a F–C catalyst, but possibly superior to $AlCl_3$ in [a] reaction employing F–C catalysts. * * * Applicant has merely followed the teaching in the British patent of the use of "any other Friedel-Crafts catalyst" by employing yet another F–C catalyst shown to be better than $AlCl_3$ in the art. Unlike other variables found in chemical reactions, the number of F–C catalysts is quite small so that no patentability or unobviousness is involved in finding that gallium chloride gives superior results.

In affirming, the board, in a brief opinion, expressed full agreement with the examiner's reasoning, finding that the advantages and improvements emphasized by appellant would be "expected."

### OPINION

Appellant's brief reduces the issue we must decide to a simple single proposition: "whether or not it would be obvious in view of the teachings of the Ulich publication to employ gallium chloride as a catalyst in the process disclosed by the British patent." It seems to be assumed that if the use of gallium chloride is obvious the use of gallium brommide is likewise and contrarywise if one is unobvious so is the other. The same assumption applies to mixtures of the two.

There is no doubt that the process of the appealed claims is a Friedel-Crafts type of reaction and that gallium chlo-

2. According to Example 1 of the specification this catalyst recovery is by washing the reaction product with hydrochloric acid solution, separating the solution by decantation, submitting it to low tension electrolysis, and recovering the gallium content in a metallic state on the cathode. It is then chlorinated with gaseous chlorine to obtain gallium chloride to be reused as catalyst.

ride is a recognized Friedel-Crafts catalyst, having been disclosed as such by Ulich in 1935. There also can be no doubt that appellant has taught the art certain advantages of using gallium chloride as the catalyst in his *particular* reaction, which advantages are neither disclosed in or suggested by the references. The Patent Office Solicitor's brief contains the following admission (references to record omitted):

> The objective evidence shows that when carbon tetrachloride ($CCl_4$) is reacted with 1,2-difluoro-1,2-dichloro-ethylene ($CFCl=CFCl$) in the presence of an aluminum chloride or gallium chloride catalyst, under optimum conditions, and the desired product ($C_3F_2Cl_6$) is recovered, that the yield of desired product is higher in the case where gallium chloride is used as the catalyst.

What appellant's "objective evidence" shows is that under the described conditions yield of $C_3F_2Cl_6$ using the gallium chloride is 6.5 times the yield using the hitherto preferred aluminum chloride catalyst. There is nothing in either reference to suggest such an advantage. The British reference expressly states that the "preferred catalyst is aluminum chloride." Although Ulich disclosed gallium chloride to be a Friedel-Crafts catalyst in 1935 and, according to the examiner, showed it "to be better than $AlCl_3$ in the art," what the British patent says about other F–C catalysts some 8 years later is that "any other Friedel-Crafts catalyst, such as boron trifluoride, zinc chloride or ferric chloride, may also be used." Nevertheless, in spite of this knowledge of other F–C catalysts, aluminum chloride is preferred. Gallium chloride is not mentioned. That was still the preference of the art for appellant's type of reaction when he filed his application 20 years after the convention filing date of the British patent, which belongs to Imperical Chemical Industries, Ltd.

Ulich was not concerned with appellant's type of reaction or the production of any compound containing fluorine. The Patent Office brief does not accurately characterize the Ulich article in saying it is "a report on comparisons between the use of aluminum chloride and gallium chloride in two Friedel-Crafts reactions." The comparison between those two catalysts was merely incidental to the main purpose of the investigations reported which, in the authors' own words, was this (translation from the German):

> Reaction-kinetic test methods have as yet hardly been applied to the large and important group of organic catalytic reactions named after Friedel and Crafts. In the hope of contributing to the clarification of the mysteries which still cloak these reactions, we have conducted a few measurements of this type which constitute only a first step into this extensive field but have already produced a few results worth reporting.

We limited ourselves to the reactions between:

> I. benzoyl chloride and benzene, and

> II. n-propyl chloride and benzene

and investigated both, using $AlCl_3$ and $GaCl_3$ as catalysts.

> We examined the chronological progress of the reactions by measuring at constant pressure the volume increase which accompanied the HCl development.

In contrast to the characteristic hydrogen chloride (HCl) development of the Ulich research, it is noted at this point that appellant's reactions liberate no HCl. It is also noted that both reaction I and reaction II involve the addition of an organic group to an aromatic nucleus, benzene, whereas no aromatic nucleus is involved in appellant's reactions. For these and other reasons it appears to us that the work Ulich was doing was not such as would produce any information relevant to the elimination of the drawbacks found in the preparation of fluoro halogenated propane derivatives using aluminum chloride catalyst with which appellant was concerned.

Ulich's reaction I is described in detail under the heading "The Ketone Syn-

thesis." The bulk of the description concerns work using $AlCl_3$. What was done with $GaCl_3$ is briefly described in a single concluding paragraph as follows:

GaCl₃ as catalyst, which was also used in the form of the compound $GaCl_3 \cdot C_6H_5COCl$ promotes the reaction even more than $AlCl_3$. However, within a short time a yellow compound is precipitated whereby the reaction is delayed considerably. The composition of this compound has not yet been clarified.

We do not think this can be characterized as an unqualified recommendation of gallium chloride as superior to aluminum chloride even in the Ulich ketone synthesis and it is certainly no suggestion that it would be advantageous to replace the "preferred" $AlCl_3$ in the process of the British patent with $GaCl_3$.

The Ulich reaction II is "The Hydrocarbon Synthesis" and it was carried out in "a carbon disulfide solution; i. e., to 20 cc $CS_2$ varying quantities of benzene (0.2 to 3 cc) propyl chloride (0.2 to 1 cc) and a catalyst were added." This shows the scale on which the Ulich investigation was conducted. Appellant's reaction does not take place in a carbon disulfide solution, nor does that disclosed in the British patent. As in reaction I, one of the reactants is benzene which neither the British patent nor appellant uses. The paragraph containing the disclosure on which the examiner principally relied, parts of which are repeated later in the Ulich article, reads:

More exact assertions can be made regarding the mechanism of the reactions catalyzed by gallium chloride. The use of $GaCl_3$ is of great advantage in reaction-kinetic measurements, because $GaCl_3$, in contrast to $AlCl_3$, is readily soluble in carbon disulfide and other solvents of a lower dielectric constant. Thus, a homogenous system is available from the beginning. It is possible that this would also have a favorable effect for some of the preparatory operations with the aid of the Friedel-Crafts reaction, and we should, therefore, like to call the attention of all organic chemists to this catalyst([2]). To this must be added that $GaCl_3$, in the cases examined by us, even exceeds $AlCl_3$ in activity. *However, it is a disadvantage that this high activity is easily and greatly impaired through impurities as well as reaction products.* [Emphasis ours.]

The footnote (2) refers to the fact that "the Ga metal is now available at prices which correspond approximately to those of platinum." In this connection the Patent Office brief has invited our consideration of the general discussion of Friedel-Crafts reactions in Kirk-Othmer, Encyclopedia of Chemical Technology, 1st ed., 1951, Vol. 6, pages 883–891, from which we have noted with interest that aluminum chloride was then selling for 11 cents a pound and that the article nowhere refers to gallium chloride or any other gallium catalyst, notwithstanding Ulich's 1935 disclosures.

Upon full consideration of Ulich we are unable to find therein the apparently unqualified recommendation to use gallium chloride in place of aluminum chloride which the Patent Office seems to see. We find, on the contrary, a disclosure of greater activity immediately qualified by disadvantages, laboratory tests involving different reactants than appellant's in a different system in which the drawbacks referred to in appellant's specification are not involved. We are therefore of the view that Ulich would not suggest to one of ordinary skill in the art to use, in the process of the British patent, gallium chloride as the catalyst in place of the preferred aluminum chloride or the other not preferred Friedel-Crafts catalysts which that patent mentions. In other words, we do not find that the Patent Office has made out a prima facie case of obviousness. That concludes the matter and the decision of the board is reversed.

Reversed.