**Application of Karl Heinz FISCHER.**
**Patent Appeal No. 8971.**

United States Court of Customs and
Patent Appeals.

Sept. 20, 1973.

Henry N. Paul, Jr., Philadelphia, Pa.
(Paul & Paul, Philadelphia, Pa.) attor-
ney of record, for appellant; John F.
McNulty, Philadelphia, Pa., of counsel.

S. Wm. Cochran, Washington, D. C.,
for the Commissioner of Patents; Fred
W. Sherling, Washington, D. C., of coun-
sel.

Before MARKEY, Chief Judge, RICH,
BALDWIN and LANE, Associate
Judges, and ALMOND, Senior Judge.

LANE, Judge.

This appeal is from the decision of
the Patent Office Board of Appeals sus-
taining the rejection of claims 1–5 of
appellant's application Serial No.
674,617 filed October 11, 1967, entitled
"Calcining of Carbon Substances and
Carbonaceous Rocks in a Tunnel Kiln."
The claims were rejected under 35 U.S.
C. § 103 as unpatentable over Angevine,
U. S. Patent No. 3,009,863 issued No-
vember 21, 1961. We reverse the
board's decision.

Both the claimed invention and the
Angevine disclosure are directed to
methods of calcining carbonaceous arti-
cles in a tunnel kiln, and both deal with
the problem of volatilization of binding
agents contained in the articles. During
calcination according to the Angevine
method, the volatilized binding agents
undergo reaction which produces soot
and coke on the walls of the calcination
apparatus. Angevine disposes of that
soot and coke formation by subjecting
them to combustion.

Appellant's method of calcination uti-
lizes an oxygen-free environment in
which it is alleged that no soot and coke
is formed, the binding agent volatiles
being drawn off by use of an oxygen-
free scavenging gas. Thus, appellant's
specification states the following.

> According to the invention the de-
> sired aim is achieved by feeding an
> oxygen free scavenging gas under a
> slight excess pressure into the calcin-
> ing channel and by drawing off the
> same from the calcining channel par-
> ticularly in that region of the kiln,
> where the largest amount of binding
> agent vapours occurs, together with
> the latter. * * *

\* \* \* \* \* \*

Since an oxygen free atmosphere is established in the tunnel kiln undesired combustions of the binding agent vapours within the kiln can no longer occur.

That disclosure is reflected in appellant's claims, of which claim 1 is representative:

1. Method for calcining carbon substances and carbonaceous rocks in a tunnel kiln which comprises maintaining an oxygen free atmosphere throughout said kiln, while feeding an oxygen free scavenging gas under a slight excess pressure into the calcining channel and withdrawing said gas together with binding agent vapours from the calcining channel, in that region of the kiln where the largest amount of binding agent vapours occur.

The limitations imposed on the method in claims 2–5 are not material under the view we take in this appeal, although we do note that the solicitor has called attention to claim 5 which uses the language "substantially oxygen-free atmosphere \* \* \*."

Angevine discloses the formation of coke deposits, teaches that they must be removed, and explains the following, with references to drawings omitted, respecting removal:

These coke deposits, much of the soot entrained in the kiln gases, and some of the kiln gases themselves may be disposed of in the practice of the invention by maintaining a condition of higher pressure in the flues \* \* \* in those portions adjacent the kiln tunnel \* \* \* where the coke deposits occur than the pressure existing within the kiln chamber \* \* \* at substantially the same location. This pressure differential condition causes gaseous products of combustion, containing carbon dioxide, water vapor and excess air, to flow from the flues \* \* \* through the porous walls separating the flues from the kiln tunnel \* \* \* adjacent the coke deposits. \* \* \*

Passage of any additional gaseous products from the flues \* \* \* into the kiln tunnel \* \* \*, greater than that required to consume the coke deposits, will support combustion of the kiln-generated gases, including the aforementiond entrained soot. \* \* \*

\* \* \* As an alternative to any one or more of the above means for consuming the coke deposits and soot within the kiln tunnel \* \* \*, intermittently operated steam jets \* \* \* may be employed for admitting steam in amount sufficient to support combustion of the coke and soot.

In addition to the quoted disclosure concerning consumption of coke, soot and the like by combustion, the Angevine patent teaches the desirability of reducing the oxygen content of the atmosphere to below about two percent by volume in order to avoid explosion when the system is opened. Flushing with substantially inert gases is likewise taught.

In holding that the claimed subject matter would have been obvious to one of ordinary skill in the art aware of the Angevine disclosure, the examiner and board adopted essentially three rationales. Our overall view is that the methods of Angevine and appellant are markedly distinct, the former requiring combustion and the latter avoiding the presence of oxygen so as to prevent combustion, and we find none of the rationales to be sound.

The examiner noted that the specification discloses that the oxygen-free scavenging gas used by appellant may, like the gas used by Angevine, be a product of combustion, and he postulated that such a gas stream would inherently contain some oxygen. One theory of rejection therefore appears to be that the claims do not contemplate a truly oxygen-free gas or oxygen-free environment.

■ We are not here confronted with a rejection under 35 USC 112. In the absence of a proper challenge to the operativeness of a claimed method or a challenge to the support of claim language in the specification, we must proceed on the assumption that the method is what it is claimed to be. The method here claimed is clearly one which utilizes an oxygen-free gas and environment. As the specification unequivocally states, an oxygen-free atmosphere precludes combustion in the tunnel kiln, and that is what is desired. We note that appellant responded to the examiner's allegation that an oxygen-free gas and atmosphere could not be achieved by asserting that they could. In any event, we do not regard operativeness as an issue before us.

From the standpoint of claim interpretation in light of the disclosure, it is certain that the gas and environment are intended to be sufficiently free of oxygen that combustion cannot occur. Hence, whether the claim language is "oxygen free" or "substantially oxygen-free," as in claim 5, we do not think that the claims can be construed as though the scavenging gas and tunnel kiln atmosphere contain oxygen as they do in the Angevine process where combustion is required.

The examiner and board additionally contended that the Angevine process operates under oxygen-free conditions, particularly when the alternative steam embodiment, described in the quoted portion above, is employed. Appellant has taken the position that that embodiment is not so fully and clearly described as to enable one skilled in the art to use it, or at least to use it in a manner which would correspond to appellant's oxygen-free method. We agree with that position.

Angevine refers to an intermittent steam process which would admit steam in a manner to support combustion. As indicated above, we view the Angevine disclosure in its entirety as teaching the necessity for combustion to dispose of coke, soot and other condensed products of binding agent volatilization. Angevine refers to combustion in connection with the steam embodiment. Therefore, even if the use of steam would stimulate the use of an oxygen-free gas stream, the teaching of the use of such a stream intermittently while supporting combustion would not be a teaching of maintaining an oxygen-free atmosphere. We are unaware of a way in which steam could be used to simultaneously support combustion and maintain an oxygen-free atmosphere, and we find no adequate answer to appellant's argument. We conclude that Angevine fails to teach the use of an oxygen-free gas and oxygen-free environment during calcination.

Finally, the examiner held that it would have been obvious from Angevine to use an oxygen-free gas and environment consistent with the teaching of flushing the atmosphere to an oxygen content of less than two percent by volume and the teaching of using a gas which is substantially inert to the carbonaceous articles undergoing calcination. We are convinced that fairly read, Angevine suggests that an environment which supports combustion is essential in order to consume the coke and soot which is taught to always be formed. However small the actual difference between the low oxygen content of the Angevine tunnel kiln atmosphere and the oxygen-free atmosphere maintained by appellant, we conclude that on this record it must be held to be an unobvious difference. One skilled in the art would have to discard an essential premise held by Angevine—the need for an atmosphere which can entertain combustion—in order to recognize appellant's process, and there is plainly no teaching in Angevine suggestive of such a deviation. As noted in appellant's specification, no combustion can occur under the conditions of the claimed method. That is the antithesis of the tenor of Angevine's patent specification.

■ Although the solicitor alluded to the absence of proof of results asserted by appellant to flow from the claimed method, we think appellant need not

have proved any unexpected results. We find that the claimed method as a whole would not have been obvious to one of ordinary skill in the art in view of Angevine, and, therefore, that the Patent Office has failed to make out a prima facie case of obviousness. The board erred in sustaining the § 103 rejection of claims 1–5 as unpatentable over Angevine, and the board's decision is accordingly reversed.

Reversed.

RICH, Judge (concurring).

I concur in a reversal for the reasons which follow.

I agree that the Angevine disclosure, read as a whole, as it must be, wholly fails to suggest the operation of a tunnel kiln in the manner disclosed and claimed by appellant, which is with an oxygen-free atmosphere (claims 1–4) or with a "substantially oxygen-free atmosphere" (claim 5). Angevine's careful, detailed, and explicit teaching is quite to the contrary. While he sweeps out most of the combustibles without burning (oxidizing) them "under substantially inert atmospheric conditions," in two of his "four essential thermal steps," namely steps B and C, baking and soaking, he deliberately operates his kiln, continuously, so as to eliminate soot, coke, and "higher-boiling devolatilization products of the binder and coke aggregate" by introducing enough air through the kiln wall from the burner to assure they are "combustibly consumed." Angevine is quite specific about this. He says, for example (my emphasis),

> Some additional heat is obtained in the soaking zone C *by combustion* of limited amounts of soot, coke and gas generated within the kiln tunnel 10, the coke, for the most part, being deposited on the inside walls of the ware chamber in the soaking zone, and the soot entrained in the generated kiln gases.

Where the coke deposits on the kiln walls—a situation Angevine does not prevent—he so controls pressures as to cause gases from his combustion chamber, carrying "excess air," to flow into the kiln ware chamber to contact the coke deposited on the wall and consume it "by combustion." Nowhere does he suggest that *this* air supply is so limited that the hot gases contain no more than 2% oxygen. Whatever the oxygen content may be, careful *control* is exercised so that there is *just enough* to consume the coke deposits, support combustion of the "kiln-generated gases" and the soot entrained therein, leaving no excess "to support burning of the carbon articles under thermal processing * * *."

It is clear to me that this carefully planned kiln management is the antithesis of operating a kiln with an oxygen-free or even "substantially" oxygen-free atmosphere and would not suggest appellant's invention to anyone. It is therefore unobvious on this record.

It also seems to me that Angevine uses the term "inert" in a special sense. True, he says he wants "substantially inert atmospheric conditions" in his kiln but he makes clear that what he is really after is "an environment inert or non-reactive *to the carbon articles* at all times during their progressive thermal treatment." (My emphasis.) His is a process involving *limited* oxygen supply, not an oxygen-free atmosphere. He is also careful *where* he introduces oxygen so the atmosphere is "substantially inert *to the carbon anodes*" (my emphasis). This is not inertness in a general sense at all.

I therefore agree to the reversal.